**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
|    Plaintiff/Respondent, § | | |
| § | | |
| v. § | CR. No. C-08-376 | |
| § | C.A. No. C-09-144 | |
| ROGELIO CHAVEZ-DUQUE, § | | |
|    Defendant/Movant. § | | |

**ORDER GRANTING MOTION TO DISMISS FIRST 28 U.S.C. § 2255 MOTION,
ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
ORDER DENYING CERTIFICATE OF APPEALABILITY, AND
<u>ORDER DENYING MOTION FOR TRANSCRIPT AT GOVERNMENT EXPENSE</u>**

Defendant Rogelio Chavez-Duque filed a motion pursuant to 28 U.S.C. § 2255 on June 18, 2009 (D.E. 43) and the Court ordered the United States to respond. (D.E. 45.) The United States filed its response in opposition to the § 2255 motion on August 27, 2009. (D.E. 58.)

Instead of filing a reply, as permitted by the Court's response order (D.E. 45), Chavez-Duque filed two documents, both of which were received by the Clerk on September 16, 2009. In the first, which Chavez-Duque titled as a Motion to Dismiss, he asks this Court to dismiss the first § 2255 motion he filed "since the petitioner was advice erronical [sic] from a prisoner." (D.E. 60 at 1.) The second document is a second motion under 28 U.S.C. § 2255. (D.E. 61.) These documents, and Chavez-Duque's pending motion for a transcript (D.E. 46), are addressed herein.

**I.   MOTION TO DISMISS FIRST § 2255 MOTION**

The Court turns first to Chavez-Duque's motion to dismiss. In these proceedings, the Court may apply the Federal Rules of Criminal or Civil Procedure, "to the extent they are not inconsistent with any statutory provision or [the § 2255 Rules]." RULES GOVERNING SECTION 2255 PROCEEDINGS 12. The Court concludes that the most applicable rule to Chavez-Duque's motion to dismiss is Rule 41, Fed. R. Civ. P. In pertinent part, Rule 41(a)(1) provides:

1

> [T]he plaintiff may dismiss an action without a court order by filing:
>
> > (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
>
> > (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A). Otherwise, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Although the United States has already filed its response to Chavez-Duque's first § 2255 motion (D.E. 43), Chavez-Duque has now shown a clear intention to dismiss that motion, and the Court will allow him to dismiss it. Accordingly, Movant's motion to dismiss (D.E. 60) is GRANTED, his initial § 2255 motion (D.E. 43) is DISMISSED, and the Court will not consider the claims raised therein.

## II.     SECOND MOTION TO VACATE UNDER 28 U.S.C. § 2255

The more difficult question to resolve is whether the sole claim raised in Chavez-Duque's second § 2255 motion (D.E. 61) is properly before the Court, such that it must also be addressed. Essentially, his latest filing can be treated as a motion to amend his first § 2255 filing to add a claim. Rule 15(a) of the Rules of Civil Procedure states that a party may amend his pleading after a responsive pleading has been served "only with the opposing party's written consent or the Court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Notably, a proposed amendment to an initial motion to vacate pursuant to § 2255 does not constitute a second or successive motion subject to AEDPA's limitations on such motions. Johnson v. United States, 196 F.3d 802, 805 (7th Cir. 1999). This Court finds that justice requires allowing the amendment, and the Court will therefore address Chavez-Duque's new motion.[1]

---

[1] Notably, Chavez-Duque's numerically second § 2255 motion, which the Court treats herein as a motion to amend, was filed within the applicable statute of limitations. Thus, there is no need to determine whether his claims in his second pleading "relate back" to his first filing so as to render them timely. Cf.

2

Chavez-Duque's new motion lists a single ground for relief.  Specifically, he argues that his defense counsel was ineffective for failing to investigate and prepare a defense based on a claim of duress.  (D.E. 61 at 5.)  In his supporting memorandum, he states repeatedly that his counsel failed to obtain the necessary or "required" evidence to corroborate Chavez-Duque's duress claim. Specifically, he contends that he was threatened by certain individuals into transporting the load of drugs.  Chavez-Duque complains that his counsel was ineffective both for encouraging him to plead guilty instead of pursuing his "duress" defense at trial and for allegedly failing to challenge his sentence, or to seek a downward departure, on the basis of duress.  Thus, the Court construes his motion as raising both a claim of ineffective assistance of counsel as to his plea and a claim of ineffective assistance at sentencing.

For the reasons set forth herein, the Court concludes that Chavez-Duque has not shown he is entitled to relief.

## III. BACKGROUND

### A. Factual Background

Chavez-Duque was the driver and sole occupant of a tractor-trailer that entered the Falfurrias, Texas, U.S. Border Patrol checkpoint for inspection at approximately 2:10 a.m. on May 21, 2008.  Chavez-Duque advised agents that he was a valid B1/B2 visa holder and resided in McAllen, Texas. He stated that he was hauling watermelons from Edinburg, Texas to Georgia and that he had observed as the watermelons were loaded into the trailer, which was locked.  Agents noticed that Chavez-Duque seemed to be anxious to leave.  At this time a service canine was performing a free air sniff of the tractor-trailer.  Agents asked Chavez-Duque for permission to

---

Mayle v. Felix, 545 U.S. 644, 657-59 (2005) (examining the interaction between AEDPA's statute of limitations and the relation-back provision of Fed. R. Civ. P. 15(c)92) and instructing that claims relate back to an original pleading when there exists between the two a common "core of operative facts.").)

inspect the tractor-trailer and he agreed.

Once in the secondary inspection area, the service canine alerted and indicated to the front end area of the trailer. Agents requested permission from Chavez-Duque to open the trailer. Again, Chavez-Duque agreed and he removed the lock and untampered seal from the trailer. The service canine immediately ran to the front end of the trailer and indicated to the presence of contraband. Discovered mixed in with the watermelons were 140 bundles of marijuana weighing 445.75 kilograms (net weight) which had an estimated value of $786,000. Chavez-Duque was arrested, but declined to make any statements and requested an attorney.

Investigation revealed that the tractor-trailer was registered to Chavez-Duque and that, while he held a B1/B2 visa, the visa did not authorize employment. BICE agents arrived and took custody of the case. During a debriefing, Chavez-Duque stated that shortly after he started his trucking business in September 2007, he was approached by individuals who asked him to transport marijuana and that he refused. He stated that after refusing, he was constantly harassed by the same individuals to transport marijuana. Approximately one month prior to his arrest, these individuals demanded that Chavez-Duque pay a fee to them for not transporting marijuana and he made the payment. He was also threatened and told that if he refused to transport marijuana, he would be taken to Mexico and would not return, which he interpreted as a threat to kill him. Subsequently, Chavez-Duque agreed to transport marijuana.

### B.   Criminal Proceedings

On June 11, 2008, Chavez-Duque was charged in a single-count indictment with possession with intent to distribute approximately 445.75 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (D.E. 12.) He pleaded guilty pursuant to a written plea agreement that contained a waiver of his § 2255 rights and right to appeal. (D.E. 31; see also D.E. 49,

Rearraignment Transcript.) At his rearraignment, Chavez-Duque admitted the facts as set forth by the prosecutor were correct. There was no mention at that time of any claim of duress, threats, pressure, or other force used upon Chavez-Duque and Chavez-Duque did not object to the omission. (See R. Tr. at 22-24.)

The Presentence Investigation Report found that his base offense level for the offense was a 28, but recommended a two-level adjustment for safety-valve relief, and a three-level reduction for acceptance of responsibility. (PSR at ¶¶ 12-19.) The resulting total offense level was a 23. (PSR at ¶ 21.) When coupled with his criminal history category of I, his resulting guideline range was 46 to 57 months. (PSR at ¶¶ 22-24, 37.) Counsel filed a number of objections to the PSR. (D.E. 33.)

Chavez-Duque was sentenced on December 11, 2008. At sentencing, the United States indicated that it would not contest the defense objection to the weight of the marijuana, which dropped the base offense level two levels, from a 28 to a 26, and resulted in an overall reduction in the advisory guideline range to a range of 37 to 46 months. (D.E. 54, Sentencing Transcript ("S. Tr.") at 4-5.) Defense counsel also sought a downward adjustment on the basis that Chavez-Duque played either a minor or minimal role in the offense, but the Court overruled that objection. (S. Tr. at 5-10.)

Finally, Chavez-Duque's counsel argued that he should receive a reduction or a sentence below the advisory guidelines range because he acted under duress. (S. Tr. at 11-15.) Specifically, as described by counsel at sentencing, Chavez-Duque owed money to a certain individual, and that individual kept asking Chavez-Duque to transport drugs for him and Chavez-Duque continually refused. Chavez-Duque was assaulted a couple of months before his arrest. Then, on the date of his arrest, Chavez-Duque was approached by several men who came to him in cars as he was in

Hidalgo preparing to take a load of watermelons north to Georgia. According to Chavez-Duque, those men threatened him at that time, telling him that either he needed to take a load of drugs up north for them or they would "take him across the river and he would never be seen again." (S. Tr. at 12.)

Chavez-Duque therefore agreed to take the load up. He was escorted physically by one of the men, who rode in the passenger seat of the cab, and followed by the other men, who rode in a car. According to Chavez-Duque, several miles before reaching the checkpoint, he was told to stop the truck. He did so and let the passenger out. The passenger got in the car that was following, and Chavez-Duque proceeded to the checkpoint where he was stopped. (S. Tr. at 12-13.)

After defense counsel's recitation of the foregoing facts and a statement by Chavez-Duque on the issue, the prosecuting AUSA presented the government's view of the issue. Essentially, the United States' position was that Chavez-Duque's version of the alleged duress he faced had changed over time:

> [E]arly on there was a lot of discussion about the loan being forgiven in exchange for him doing this. And over time, it seems the loan forgiveness has become less and less important, and the physical duress has become more important over time, over time as this story has been told. That stands out as a additional significant factor in the way this has evolved.

(S. Tr. at 14-15.)

The Court then offered its perspective as to Chavez-Duque's claim of duress:

> Fascinating story, I never have been presented with a factual situation quite like this before. It is unfortunate that we just don't have more to go on. I mean, I – What you are saying is plausible. It does not – it is not out of the question. I mean, certainly these people play very rough in these organizations. They haven't had to resort to this type of force to my knowledge in the past, but it doesn't mean I won't see more if it. Usually all they have to do is offer money to someone and they're very willing to transfer the drugs. That's what usually happens. I have never been faced with a scenario quite like this

6

>> where the defendant claims that he was physically forced or threatened to transport the drugs under these circumstances.

(S. Tr. at 15-16.)

The Court later continued:

>> ... I sit up here and sentence a lot of people. I have sentenced thousands of people, and I am duty bound to try to be consistent in how I approach sentencing in sentencing people. As I said before, it's a fascinating story. I don't necessarily find it to be implausible, that it's not – you know, that it is something that I don't think would ever happen. I think that it's very likely that this type of situation could happen. It's just that I don't have anything else to go on, other than you standing before me and giving me this version of events. And if I accept that, I am sort of setting a precedent on hundreds of other people that I will sentence that I just accept whatever they tell me about why they got into this transaction and start departing downward or applying sentences outside of the guideline range. And I can do that, but I just don't think based upon the information provided to me today that I am prepared to do that.

(S. Tr. at 17-18.)

Finally, the Court concluded that it believed the lower end of the guideline range was a "reasonable sentence" under these circumstances. (S. Tr. at 18.) The Court thus sentenced Chavez-Duque to the lowest end of the advisory guideline range, 37 months, to be followed by a four-year term of supervised release. (S. Tr. at 18-19; D.E. 39) The Court also imposed a $100 special assessment. (S. Tr. at 19; D.E. 39.)

Judgment was entered against Chavez-Duque on December 22, 2008. (D.E. 39.) Consistent with his waiver of appellate rights, he did not appeal.

### IV. MOVANT'S ALLEGATIONS

Chavez-Duque's amended motion lists only a single ground for relief, but that ground essentially contains two separate claims. As noted supra at page 3, the Court construes his motion as alleging that his counsel was ineffective both: (1) for encouraging him to plead guilty instead of

7

defending the case at trial based on a duress defense; and (2) for failing to challenge Chavez-Duque's sentence more fully at sentencing.

Because he raises an ineffective assistance of counsel claim with regard to his plea, it arguably falls outside the scope of his waiver of § 2255 rights. Accordingly, the Court does not conclude that his § 2255 waiver bars this claim and will instead address it on its merits. Moreover, in addition to the fact that his claim of ineffective assistance of counsel at sentencing is likely barred by his § 2255 waiver, it does not entitle him to relief, as discussed herein. Thus, the Court denies this claim on its merits, as well.

## V.   ANALYSIS

### A.   28 U.S.C. § 2255 -- General Standards

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

### B.   Ineffective Assistance of Counsel As to Plea

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient

and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994), cert. denied, 514 U.S. 1071 (1995) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

In order to show prejudice arising from an attorney's ineffective assistance during the plea negotiations or the plea itself, Chavez-Duque must show that, absent his counsel's deficiencies, he would have proceeded to trial. See also United States v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (in order to show prejudice as a result of ineffective assistance during the guilty plea process, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial") (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). When viewing the record as a whole, it is clear that Chavez-Duque cannot show either deficiency or prejudice and thus is not entitled to relief as to his claim.

In this case, Chavez-Duque claims that his counsel was ineffective for encouraging him to plead guilty, instead of encouraging him to proceed to trial and pursuing the affirmative defense of duress at trial. He has not shown deficiency, however. The Fifth Circuit has repeatedly admonished that attorneys should not be subjected to unrealistic standards and that, when reviewing a § 2255 motion, "the acuity of hindsight is not our proper lens." United States v. Faubion, 19 F.3d 226 (5th Cir. 1994). The Fifth Circuit has explained the strong deference due counsel's decisions:

> Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the

> distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." ... There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."

United States v. Harris, 408 F.3d 186, 189 (5th Cir. 2005) (citations omitted).

Applying these standards, the Court cannot find that counsel was deficient for advising Chavez-Duque to plead guilty, instead of defending the case on the basis of duress. In order to establish a duress defense, Chavez-Duque would have had to establish, by a preponderance of the evidence, the following four elements:

> (1) that the defendant was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury;
>
> (2) that defendant had not recklessly or negligently placed himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
>
> (3) that defendant had no reasonable legal alternative to violating the law; a chance both to refuse to do the criminal act and also to avoid the threatened harm; and
>
> (4) that a direct causal relationship may be reasonably anticipated between the criminal action taken and the avoidance of the threatened harm.

United States v. Posada-Rios, 158 F.3d 832, 873 (5th Cir. 1998) (internal quotations, brackets and citations omitted); see also Dixon v. United States, 548 U.S. 1, 4 & n.2 (2006) (noting that the Supreme Court has not specified the elements of a federal duress defense but "presuming" the accuracy of the trial court's description of the elements, which closely match those set forth in Posada-Rios). While the facts as alleged by Chavez-Duque arguably could have supported a finding of duress, it is not at all clear that a duress defense at trial would have been successful. Moreover, if the defense had been unsuccessful, Chavez-Duque would have faced more time if convicted after a trial, because he would have likely lost his adjustment for acceptance of responsibility.

10

At sentencing, the Court acknowledged that the story Chavez-Duque was telling was a plausible version of events. But the lack of any evidence other than Chavez-Duque's claim that this occurred led the Court to decline to downwardly depart on the basis of duress. (S. Tr. at 16-18.) Instead, the Court sentenced him to the lowest end of the advisory guideline range. This same problem – a lack of corroborating evidence – would have plagued Chavez-Duque had he proceeded to trial. Notably, Chavez-Duque does not identify any witnesses that were available and would have testified on his behalf, or what they would have said. In any event, claims of uncalled witnesses are "disfavored." United States v. Harris, 408 F.3d 186, 190 (5th Cir. 2005) (citing Buckley v. Collins, 904 F.2d 263, 266 (5th Cir. 1996)). This is because "the presentation of testimonial evidence is a matter of trial strategy and because allegations as to what a witness would have testified to are largely speculative." Schwander v. Blackburn, 750 F.2d 494 (5th Cir. 1985) (citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978) and Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984)).

If the defense would have been based solely on Chavez-Duque's testimony, the Court questions the viability of such a defense, in light of the record as a whole. Notably, although at sentencing and now he alleges physical duress, Chavez-Duque lied to Border Patrol agents when he first arrived at the checkpoint. He was alone at that time and could have told agents that he was acting under duress, but he did not. At any point during the questioning, he could have told agents that he was threatened and that the individuals who threatened him were following him. He did not. Sitting alone in his tractor-trailer at a checkpoint surrounded by law enforcement personnel was a fairly safe place to disclose that information, without threat of harm from the individuals allegedly in the car behind him. Moreover, according to the prosecutor's statements to the Court at sentencing, Chavez-Duque stated early on in the case that he was acting under "duress" because he

11

owed money to the individual he was transporting for, and it was only later that his story evolved into one where the loan forgiveness became less important and threats of physical harm became more important. (S. Tr. at 14-15.)

In light of the foregoing facts, it is highly questionable whether a duress defense would have succeeded at trial. Thus, especially given the lenient standard afforded counsel's decisions, the Court does not find counsel deficient for advising Chavez-Duque to plead guilty.

Additionally, Chavez-Duque cannot show prejudice because the rearraignment transcript clearly establishes that Chavez-Duque's decision to plead guilty was his own and that it was entirely voluntary. At his rearraignment, Chavez-Duque testified in open court that he had received a copy of his indictment, that his attorney had explained it to him, and that he understood it. (R. Tr. at 9.) He also testified that he was satisfied with his attorney's services. (Id.) Chavez-Duque told the Court that he signed his plea agreement voluntarily, that he either read it or had it read to him before signing, that he understood the terms of the agreement, and that no one had offered him anything in exchange for his guilty plea, other than what was in the written agreement. (R. Tr. at 13.) The Court informed Chavez-Duque of the various trial rights available to him, and he testified that he understood that if he pleaded guilty, he would be giving up those trial rights. (R. Tr. at 19-21.)

Consistent with Rule 11, Fed. R. Crim P., the Court explained to Chavez-Duque the maximum punishment that he might receive. Specifically, the Court informed him that he could be sentenced to a maximum of forty years in prison and a maximum fine of $2 million. The Court also informed him that there was a mandatory $100 special assessment, and a supervised release term of not less than four years, and that it could last for the rest of his life. (R. Tr. at 15.) Chavez-Duque testified that he understood. (R. Tr. at 15.)

Chavez-Duque's sworn statements in open court are entitled to a strong presumption of

12

truthfulness. United States v. Lampaziane, 251 F.3d 519, 524 (5th Cir. 2001) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." United States v. Cothran, 302 F.3d 279, 283-84 (5th Cir. 2002). Chavez-Duque's sworn statements at the rearraignment show that he fully understood the rights he was giving up under the plea agreement, and that his guilty plea was voluntary. See United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994). In short, Chavez-Duque cannot overcome his testimony at the rearraignment – which clearly established a knowing and voluntary plea – to now show that he would have insisted on going to trial but for counsel's performance.

For all of these reasons, Chavez-Duque cannot meet either of the Strickland prongs to establish a claim of ineffective assistance of counsel. His claim of ineffective assistance in the plea process fails.

### C. Ineffective Assistance of Counsel at Sentencing

Chavez-Duque also alleges that counsel should have raised the factual basis for his duress defense at sentencing. As to any claim of ineffective assistance of counsel at sentencing, counsel in fact provided factual information concerning the duress defense to the Court and argued at length at sentencing for a downward departure on the grounds that his client acted under duress. The Court ultimately found that there was insufficient evidence to convince it that Chavez-Duque in fact acted under duress, and it therefore declined to grant a downward departure. Chavez-Duque has not pointed to anything else specific that his counsel could have argued or presented, however, that would have led to a different result. Thus, his claim of ineffective assistance of counsel at sentencing does not entitle him to relief.

### D. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus

proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Chavez-Duque has not yet filed a notice of appeal, the recently-amended § 2255 Rules instruct that this Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules. The Court thus turns to whether Chavez-Duque is entitled to a COA.

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

Based on the above standards, the Court concludes that Chavez-Duque is not entitled to a COA. That is, reasonable jurists could not debate the Court's resolution of Chavez-Duque's ineffective assistance claim, nor do the issues presented deserve deserve encouragement to proceed. See Jones, 287 F.3d at 329; Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Chavez-Duque is not entitled to a COA as to his claims.

**VI.    MOTION FOR TRANSCRIPT**

In addition to the above-discussed issues, Chavez-Duque also has a pending motion before the Court in which he requests a copy of his rearraignment transcript. (D.E. 46.) The Court had already concluded that Chavez-Duque was entitled to a copy of his rearraignment transcript at government expense if he could show that he is indigent. (See D.E. 48.) Twice the Clerk has provided Chavez-Duque with a blank *in forma pauperis* application and ordered Chavez-Duque to return the completed application. (D.E. 48.) In the Court's September 10, 2009, Order, Chavez-Duque was directed to file the completed *ifp* application within ten days. (D.E. 59.) The Court further warned Chavez-Duque that "his failure to timely provide the completed application may result in the denial of his motion for the rearraignment transcript at government expense." (D.E. 59 at 1.) To date, Chavez-Duque has failed to provide the completed affidavit. Accordingly, his motion for a copy of his rearraignment transcript at government expense (D.E. 46) is DENIED.

**VII.    CONCLUSION**

For the foregoing reasons, Chavez-Duque's motion to dismiss (D.E. 60) is GRANTED and Chavez-Duque's first motion to vacate under 28 U.S.C. § 2255 (D.E. 43) is DISMISSED. Chavez-Duque's second § 2255 motion (D.E. 61) is DENIED and he is also DENIED a Certificate of Appealability. Finally, Chavez-Duque's motion for a copy of his transcript (D.E. 46) is DENIED because Chavez-Duque has failed to demonstrate to the Court his financial eligibility for a transcript at government expense.

It is so ORDERED this 26th day of March, 2010.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE